WILLIAM F. TARANTINO (CA SBN 215343)
WTarantino@mofo.com
KWAN PARK (SBN 306719)
BPark@mofo.com
ROBERT SANDOVAL (SBN 311032)
RSandoval@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

TRITIA M. MURATA (CA SBN 234344)
TMurata@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California  90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Plaintiff
CALIFORNIA GROCERS ASSOCIATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA GROCERS ASSOCIATION, a California non-profit organization,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN JOSE, a charter municipality,<br><br>Defendant. | Case No. 5:21-cv-01772<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff California Grocers Association ("Plaintiff" or "CGA") brings this action against Defendant San Jose ("Defendant" or "City") and alleges as follows in this Complaint for declaratory and injunctive relief:

1

## INTRODUCTION

2      1.      At the onset of the COVID-19 pandemic, the State of California

3   and various counties, cities, and other regulatory bodies throughout the state issued

4   a series of emergency orders and regulations in an effort to stem the spread of the

5   virus and protect the public health and welfare. These early efforts—aimed at

6   balancing the public's basic economic and social needs with a desire to minimize

7   COVID morbidity and mortality—came at a steep price, especially for essential

8   businesses, and the millions of employees and members of the public who rely on

9   them.

10      2.      California grocers have stayed open to serve their communities

11   since day one. They understand that defeating this pandemic requires extraordinary

12   measures and have eagerly committed themselves to the task. Since March of 2020,

13   California grocers of all sizes have established rigorous and science-driven safety

14   measures, often at great expense, to adapt to this new environment and ensure that

15   they operate in a safe and hygienic manner in order to help slow the spread of the

16   virus, and protect their workers and the public.

17      3.      Grocers have implemented comprehensive safety measures for

18   customers and employees and compensated frontline grocery employees for their

19   extra efforts in a difficult environment.  Grocers have provided "appreciation pay,"

20   "hero bonuses," and "thank you pay" to reward their associates.  Additionally, in

21   terms of employee support, grocers have offered COVID-19 testing to employees

22   and provided emergency leave and paid time off to those affected by the virus or

23   experiencing symptoms.

24      4.      For worker safety, grocers have provided supplies to employees

25   including face masks and protective gear in addition to encouraging employees to

26   stay home if feeling ill and implementing paid leave policies. Plexiglas shields,

27   physical distancing measures, and contactless payment and delivery services have

28   been implemented to protect employees.  Some of California's largest grocers such

2

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

as Kroger and Albertsons joined the United Food and Commercial Workers International Union just last year to urge federal and state governments to designate grocery store employees as emergency first responders.

5.     Yet on February 23, 2021, the City adopted the "Grocery Store Employee Hazard Premium Pay Ordinance" ("Ordinance") which requires employers, starting thirty (30) days after the adoption of the Ordinance, to pay a $3 per hour premium on whatever the employees existing wage is at the time of enactment, regardless of any existing bonus or incentive program that the employer may have in place.

6.     The Ordinance unreasonably singles out specific grocers, while ignoring employers or essential frontline workers outside the grocery industry. Plaintiff seeks a declaration that the law is invalid and unconstitutional as applied to CGA's Members, and an injunction halting any action to enforce the Ordinance as to CGA's Members on the grounds that it (1) is preempted by federal law regulating collective bargaining and unfair labor practices; (2) violates the equal protection and contracts clauses of the U.S. and California constitutions.

## **JURISDICTION AND VENUE**

7.     This Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. §1331, as the Plaintiffs' claims arise under federal laws; namely, the National Labor Relations Act, 29 U.S.C. §141 *et seq.*; Article VI of the U.S. Constitution which designates the Constitution and Laws of the United States as the supreme law of the land; and the equal protection clause and contracts clause of the U.S. Constitution.

8.     This Court has supplemental jurisdiction over this subject matter pursuant to 28 U.S.C. §1367(a), as the Plaintiffs' claims arising under the California Constitution are so closely related to the federal question claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), as

this Court is sited in the federal judicial district where the events giving rise to the CGA's claims have occurred, are now occurring, and will occur in the future if not prevented through actions of this Court. CGA's members are situated in this district and are and will continue to be adversely affected by the irreparable harms sought to be remedied and prevented by this Court's action upon this Complaint.

## PARTIES

10.     Plaintiff California Grocers Association has served as the voice of the state's grocery community for over 120 years. As a nonprofit, statewide trade association, CGA's membership is comprised of over 300 retailers and approximately 150 grocery supply companies. As part of its mission, CGA has advocated on behalf of its member retailers on important policy issues. Headquartered in Sacramento, California, CGA brings this action on behalf of its members operating stores in the City of San Jose.

11.     Defendant, San Jose, is and at all relevant times has been a public entity duly organized and existing under and by virtue of the laws of the State of California as a charter municipality.

## FACTUAL BACKGROUND

12.     California Grocers Association pursues this action on behalf of its members who are grocery store employers ("Members") because the employers who operate grocery stores in San Jose will suffer a direct and adverse impact from the application of the Ordinance, and thus would have standing to pursue these claims in their own right.  The policy and legal interest CGA seeks to protect is at the core of Plaintiff's mission, and the injunctive and declaratory relief sought does not require the participation of individual members.

13.     Several Members operate grocery stores in the City that employ members of a specific labor union, United Food and Commercial Workers International, Local 5 ("UFCW 5"), and those employees are parties to collective bargaining agreements that govern the terms of their employment, including wage

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

scales. Other Members operate grocery stores that do not employ unionized workers, but those employees are free to organize and select a collective bargaining unit, should they choose to do so.

14.     Members have suffered or will continue to suffer economic and non-economic harm as a result of the enactment of the Ordinance, and its foreseeable consequences on union organizing, ongoing collective bargaining, and labor relations for both unionized and non-union grocery stores in the City of San Jose. Members are required to alter the wage scales and other terms of their existing collective bargaining agreements, regardless of any bonuses, or other non-monetary compensation provided to their employees to ease the burden of the COVID-19 pandemic.

15.     By design, the Ordinance picks winners and losers.  It singles out large grocery companies with unionized workforces (i.e., UFCW 5's members) without providing any reasonable justification for the exclusion of other employers or frontline retail workers. The Ordinance arbitrarily and improperly targets certain grocery store businesses in San Jose for disparate treatment while not requiring the same commitments from similarly situated businesses, or conferring *any* benefits on similarly situated employees.  There is no support for any of the City's statements that the Hazard Premium Pay will protect public health, address economic insecurity, and promote job retention.

## THE ORDINANCE

16.     The Grocery Store Employee Hazard Premium Pay Ordinance, also known as Ordinance No. 30534, is attached hereto as **Exhibit A**.  It applies only to grocery stores employing over three hundred (300) or more employees nationwide, regardless of where those employees are employed.  Section 5.C.1.  Grocery Store is defined as "a retail store in the City that sells household foodstuffs for offsite consumption, with at least ten percent (10%) of its sales floor area dedicated to sale of non-taxable merchandise[.]"  Section 5.C.M.

5

17.     Grocery stores meeting this minimum threshold of employees are required to provide each employee with hazard premium pay consisting of an additional three dollars ($3.00) per hour for each hour worked.  Section 5.C.J.  The Ordinance requires hazard pay to be paid for 120 days from the effective date of the Ordinance. Section 4.

18.     The Ordinance takes effect thirty (30) days following the date of its adoption, February 23, 2021, and prohibits reducing a grocery employee's compensation or limiting a grocery employee's earning capacity for exercising any rights protected under the Ordinance.  Section 7.

19.     Grocery stores are required to provide a notice of rights established by the Ordinance.  Section 8.

## FIRST CAUSE OF ACTION

### Declaratory and Injunctive Relief

### (NLRA Preemption)

20.     CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 19, inclusive.

21.     Enacted in 1935, the National Labor Relations Act ("NLRA"), as amended, 29 U.S.C. § 151, *et seq*., creates a uniform federal body of law governing union organizing, collective bargaining, and labor-management relations applicable to employers engaged in interstate commerce.  It established various rules concerning collective bargaining and defined a series of banned unfair labor practices, including bans on interference with the formation or organization of labor unions by employers. The NLRA does not apply to certain workers, including supervisors, managerial employees and confidential employees – all categories specifically excluded from the Ordinance.

22.     The NLRA prohibits state and local regulation of conduct that Congress intended to be left to be controlled by the free-play of economic forces. Legislation that interferes with the "balanced state of collective bargaining" is

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sf-4445319

preempted by the NLRA. *See Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132 (1976).

23.    In particular, the NLRA preempts any and all state and local enactments that, by design or consequence, regulate or interfere with the then-existing balance of economic power between labor and management with respect to zones of activity that, under federal labor law, are intended to be left to the free play of economic forces. Laws subject to NLRA preemption include laws that interfere with or attempt to regulate the economic tools available to labor or management during the course of collective bargaining or that otherwise interfere with the collective bargaining process, such as those that alter the parties' rights and economic alternatives during collective bargaining, or the processes and procedures utilized for union organizing.

24.    Application of the Ordinance to the activities of the San Jose Members unequivocally intrudes upon zones of activity in the areas of labor relations, union organizing, and collective bargaining that is reserved under federal labor law and policy to the free play of economic forces.  The Ordinance establishes hazard premium pay standards that, by design or consequence, empower the UFCW or other collective bargaining units to secure a wage rate they could not otherwise have obtained from the employer at a unionized or non-union grocery store. This undermines the collective bargaining process and disrupts the process of union organizing.

25.    While the City has the ability to enact ordinances to further the health and safety of its citizens, the Ordinance here bears no relation to those goals. Local minimum wage laws, for example, seek to lessen the burden on public welfare services. This ordinance is not a minimum labor standard.  It is a mandatory hourly bonus for a specific group of workers, regardless of the wage negotiated in the current collective bargaining agreements or other employment agreements.

26.    The Ordinance is preempted by the NLRA as it regulates zones of

activity that Congress intentionally left to be controlled by the free play of economic forces.

27.     The City's application and enforcement of the Ordinance will cause CGA's Members to suffer irreparable harm for which they have no adequate remedy at law, even if the Ordinance is later declared by this Court to be void and unenforceable. This claim is also brought pursuant to 42 U.S.C. §1983 and §1988(b).

28.     CGA is entitled to judgment declaring the Ordinance to be void and unenforceable under the Supremacy Clause of the U.S. Constitution and equitable and injunctive relief to prevent San Jose or any other private enforcer from attempting to enforce or give effect to the Ordinance.

<u>**SECOND CAUSE OF ACTION**</u>

**Declaratory and Injunctive Relief**

**(Equal Protection Clause of the United States Constitution)**

29.     CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 28, inclusive.

30.     CGA hereby seeks declaratory, equitable and injunctive relief to prevent the City from depriving Plaintiff's members of the protections afforded to them under the Equal Protection Clause of the U.S. Constitution, which guarantee each and all of them equal protection of the laws.  (U.S. Const., Amend. XIV, § 1). This claim is also brought pursuant to 42 U.S.C. §1983 and §1988(b).

31.     The Equal Protection Clause requires that persons who are similarly situated receive like treatment under the law, and that statutes may single out a class for distinction only if that classification bears a rational relationship to the purpose of the statute.  As such, the City may not irrationally single out one class of individuals for discriminatory treatment.

32.     The Ordinance improperly singles out certain grocery store businesses in San Jose for disparate treatment while not requiring the same

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
sf-4445319

1    treatment of similarly situated businesses.  More importantly, the ordinance

2    implicates the Members' fundamental right to be free from unreasonable

3    governmental interference with their contracts, specifically their collective

4    bargaining agreements and other employment agreements.

5          33.    The stated purpose of the Ordinance, namely, to protect public

6    health, address economic insecurity, and promote job retention during the COVID-

7    19 emergency by requiring grocery stores to provide hazard premium pay is not

8    rationally related to the discriminatory treatment of CGA's Members.  No

9    significant and legitimate public purpose exists for the Ordinance.  The City's

10   stated objectives are merely an attempt to impose a public policy rationale on

11   interest-group driven legislation for labor unions and, in particular, for UFCW 5.

12         34.    By virtue of the foregoing, application of the Ordinance to the

13   CGA's Members within the City violates the equal protection guarantees of the

14   U.S. Constitution.

15         35.    The City's application and enforcement of the Ordinance will cause

16   Plaintiff's members to suffer irreparable harm for which they have no adequate

17   remedy at law, even if the Ordinance is later declared by this Court to be void and

18   unenforceable.

19         **THIRD CAUSE OF ACTION**

20         **Declaratory and Injunctive Relief**

21         **(Equal Protection Clause of the California Constitution)**

22         36.    CGA incorporates herein by this reference the allegations contained

23   in Paragraphs 1 through 35, inclusive.

24         37.    CGA hereby seeks declaratory, equitable and injunctive relief to

25   prevent the City from depriving CGA's members of the protections afforded to

26   them under the Equal Protection Clause of the California Constitution, which like

27   the U.S. Constitution, guarantees each and all of them equal protection of the laws.

28   (Cal. Const., Art. I § 7.)

38.     For the same reasons set forth in Paragraphs 29 through 35 above, the Ordinance violates the Equal Protection Clause of the California.  Such application will cause CGA's Members to suffer irreparable harm for which they have no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### For Declaratory and Injunctive Relief

### (Contracts Clause of the U.S. Constitution)

39.     CGA incorporates herein by this reference the allegations contained in Paragraphs 1 through 38, inclusive.

40.     CGA hereby seeks declaratory, equitable and injunctive relief to prevent the City from depriving CGA's Members of the protections afforded to them under the Contracts Clause of the U.S. Constitution, which provides in pertinent part that: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." (U.S. Const., Art. I, § 10, cl. 1).  The Contract Clause imposes limits upon the power of a State, and Municipalities operating under the color of State law, to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power.

41.     The Ordinance substantially interferes with Members' contracts, including its collective bargaining agreements with its employees, without any significant or legitimate public purpose. The City's stated objectives are to protect public health, address economic insecurity, and promote job retention.  None of these justifications support this measure, because the City's stated objectives are merely an attempt to impose a public policy rationale on interest-group driven legislation for labor unions and, in particular, for UFCW.

42.     Even if the City could show a significant and legitimate public purpose behind the regulation, the substantial impairment to the Members' contractual rights and obligations (i.e., the terms of the Members' existing collective bargaining agreements) are neither reasonable nor necessary to fulfill any

10

1  such public purpose.

2  43.  By virtue of the foregoing, application of the Ordinance to CGA's

3  members constitutes a substantial and unconstitutional impairment of those

4  members existing contractual relationships that will cause them to suffer irreparable

5  harm for which they have no adequate remedy at law.

6  **FIFTH CAUSE OF ACTION**

7  **Declaratory and Injunctive Relief**

8  **(Contracts Clause of the California Constitution)**

9  44.  CGA incorporates herein by this reference the allegations contained

10  in Paragraphs 1 through 43, inclusive.  Plaintiffs hereby seek declaratory and

11  injunctive relief to prevent the City from violating, and continuing to violate, the

12  Contract Clause of the California Constitution, which provides in pertinent part

13  that: "A ... law impairing the obligation of contracts may not be passed." (Cal.

14  Const., Art. I, § 9.)

15  45.  Like the Federal Contracts Clause, the California Contracts Clause

16  also imposes limits upon the State of California, and its municipalities, to abridge

17  existing contractual relationships, even in the exercise of its otherwise legitimate

18  police power.  For the same reasons set forth in Paragraphs 41 through 43 above,

19  application of the Ordinance to CGA's members within the City constitutes a

20  substantial and unconstitutional impairment of those members existing contractual

21  relationship in violation of the California Contract Clause. Such application will

22  cause those members to suffer irreparable harm for which they have no adequate

23  remedy at law.

24  **PRAYER FOR RELIEF**

25  WHEREFORE, Plaintiff prays for the following relief:

26  1.  On the first cause of action, a judgment declaring that the

27  Ordinance, as well as any act taken in furtherance of the Ordinance by any person,

28  is preempted by the National Labor Relations Act, and its implementing regulations

and guidance, and are therefore void and unenforceable, and entering a preliminary and permanent injunction enjoining the City from enforcing or taking any action under the Ordinance;

2.      On the second and third causes of action, enter a judgment declaring that the Ordinance, as well as any act taken in furtherance of the Ordinance by any person, violate state and federal equal protection guarantees, and are therefore void and invalid, and entering a preliminary and permanent injunction enjoining the City from enforcing or taking any action under the Ordinance;

3.      On the fourth and fifth causes of action, enter a judgment declaring that the Ordinance, as well as any act taken in furtherance of the Ordinance by any person, violate the contracts clauses of the state and federal constitution, and are therefore void and invalid, and entering a preliminary and permanent injunction enjoining the City from enforcing or taking any action under the Ordinance;

4.      For an award of attorneys' fees and costs of suit herein pursuant to California Code of Civil Procedure § 1021.5, 42 U.S.C. §1988, or any other applicable law; and

5.      For such other and further relief as the Court may deem just and proper.

Dated:     March 12, 2021              MORRISON & FOERSTER LLP


By:   _/s/ William F. Tarantino_
         William F. Tarantino

Attorneys for Plaintiff
CALIFORNIA GROCERS
ASSOCIATION

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
sf-4445319

# Exhibit A



# CITY OF SAN JOSÉ, CALIFORNIA

**Office of the City Clerk**
**200 East Santa Clara Street**
**San José, California 95113**
**Telephone (408) 535-1260**
**FAX (408) 292-6207**

**City Clerk**

STATE OF CALIFORNIA)
COUNTY OF SANTA CLARA)
CITY OF SAN JOSE)

    I, Toni J. Taber, City Clerk & Ex-Officio Clerk of the Council of and for the City of San Jose, in said County of Santa Clara, and State of California, do hereby certify that **"Ordinance No. 30534",** the original copy of which is attached hereto, was passed for publication of title on the **9th day of February, 2021,** was published in accordance with the provisions of the Charter of the City of San Jose, and was given final reading and adopted on the **23rd day of February, 2021,** by the following vote:

AYES:        ARENAS, CARRASCO, COHEN, ESPARZA, JONES, JIMENEZ, MAHAN, PERALEZ, LICCARDO.

NOES:        DAVIS.

ABSENT:      NONE.

DISQUALIFIED:    FOLEY.

VACANT:     NONE.

Said Ordinance is effective as of the **26TH day of March, 2021.**

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the corporate seal of the City of San Jose, this **24th Day of February, 2021.**

(SEAL)_____

          TONI J. TABER, CMC
          CITY CLERK & EX-OFFICIO
          CLERK OF THE CITY COUNCIL

/rmk

NVF:EJM:KML
2/3/2021

ORD. NO. 30534

## ORDINANCE NO. 30534

**AN UNCODIFIED ORDINANCE OF THE CITY OF SAN JOSE ESTABLISHING LABOR STANDARDS REQUIREMENTS FOR HAZARD PAY FOR GROCERY STORE EMPLOYEES WORKING DURING THE COVID-19 HEALTH EMERGENCY IN SAN JOSE**

**WHEREAS,** the new coronavirus 19 ("COVID-19") disease is caused by a virus that spreads easily from person to person and may result in serious injury or death, and is classified by the World Health Organization ("WHO") as a worldwide pandemic; and

**WHEREAS,** COVID-19 has spread broadly throughout California and remains a significant health risk to the community, especially members of our most vulnerable populations; and

**WHEREAS,** WHO has declared that COVID-19 is a global pandemic, which is particularly severe in high risk populations, such as people with underlying medical conditions and the elderly, and the WHO has raised the health emergency to the highest level, requiring extraordinary actions to disrupt and prevent the spread of the disease; and

**WHEREAS,** on March 4, 2020, California Governor Gavin Newsom proclaimed a state of emergency in response to COVID-19; and

**WHEREAS,** on March 19, 2020, California Governor Gavin Newsom issued a "Stay Home – Stay Healthy" proclamation closing all non-essential workplaces, requiring people to stay home except to participate in essential activities or to provide essential business services, and banning all gatherings for social, spiritual, and recreational purposes. In addition to healthcare, public health and emergency services, the "Stay Home-Stay Healthy" proclamation specifically identified Grocery Stores as essential

NVF:EJM:KML
2/3/2021

ORD. NO. 30534

businesses critical to protecting the health and well-being of Californians and designated their workers as essential critical infrastructure workers; and

**WHEREAS,** on December 3, 2020, California Governor Gavin Newsom extended the "Stay Home-Stay Healthy" proclamation and imposed a Regional Stay at Home Order; and

**WHEREAS,** on January 25, 2021, the California Department of Health and the County of Santa Clara lifted the Regional Stay at Home Order and announced that businesses, entities and individuals in Santa Clara County are subject to the purple tier of the State's Blueprint for a Safer Economy and a revised County Health Officer Order; and

**WHEREAS,** as of January 26, 2021, the World Health Organization Situation Report reported a global total of 98,925,221 cases of COVID-19, including 2,127,294 deaths; as of February 3, 2021, the State of California reported 3,294,447 cases of COVID-19 including 42,466 deaths; and as of February 3, 2021, the City of San José reported 68,097 cases of COVID-19; and

**WHEREAS,** Grocery Stores are essential businesses operating in the City of San José and serve as the main points of distribution of food and other daily necessities for residents during the COVID-19 emergency; and

**WHEREAS,** Grocery Store employees are essential workers who perform services that are fundamental to the economy and health of the community during the COVID-19 crisis. These employees interact with the public and have limited ability to engage in physical distancing; and continually expose themselves and the public to the spread of disease; and

**WHEREAS,** Grocery Store employees have been supporting grocery businesses' operations and facilitating community access to food during the pandemic, despite

NVF:EJM:KML
2/3/2021

ORD. NO. 30534

facing a clear and present danger of workplace exposure to COVID-19 and receiving limited or inconsistent additional pay in recognition of this hazard; and

**WHEREAS,** Grocery Store employees cannot choose to work from home and must come to work to perform their jobs, which can involve substantial interaction with customers and/or ventilation systems that could potentially spread the virus. They are wearing masks, trying as much as possible to social distance, performing safety protocols, and learning new skills to decrease transmission of the virus to protect themselves and the public; and

**WHEREAS,** hazard pay, paid in addition to regular wages, is an established type of compensation for employees performing hazardous duty or work involving physical hardship that can cause extreme discomfort and distress; and

**WHEREAS,** Grocery Store employees working during COVID-19 emergency merit additional compensation because they are performing hazardous duty due to the significant risk of exposure to COVID-19 while working. Grocery Store employees have been working under these hazardous conditions for months. They are working in these hazardous conditions now and will continue to face safety risks as the COVID-19 public health emergency presents an ongoing threat for an uncertain period, potentially resulting in subsequent waves of infection; and

**WHEREAS,** the continued availability of Grocery Stores is fundamental to the health and welfare of the community and is made possible during the COVID-19 emergency because Grocery Store employees are on the frontlines of this devastating pandemic supporting public health, safety and welfare by working in hazardous conditions; and

**WHEREAS**, the Occupational and Environmental Medicine Journal published a study of the association between COVID-19 infection, exposure risk and mental health among a cohort of essential retail workers in the USA. In that study, the researchers found a

NVF:EJM:KML
2/3/2021

ORD. NO. 30534

considerable asymptomatic COVID-19 infection rate among grocery workers:
Employees with direct customer exposure were five times more likely to test positive for
COVID-19; and

**WHEREAS**, the Brookings Institute Report dated November 2020 reported the
inequities between the windfall profits of retail businesses and their essential workers
and found that while top retail companies' profits have soared during the pandemic, pay
for their frontline essential workers, in most cases, has not; that the top retail companies
in the analysis earned on average an extra $16.7 billion in profit this year compared to
last year; a 40% increase; that the 13 companies studied raised pay for their frontline
essential workers by an average of just $1.11 per hour since the pandemic began, a
10% increase on top of wages that are often too low to meet a family's basic needs; and

**WHEREAS,** establishing an immediate requirement for Grocery Stores to provide
hazard pay to Grocery Store employees protects public health and welfare by insuring
the stability of the food supply chain, supports stable incomes and promotes job
retention by ensuring that Grocery Store employees are compensated for the
substantial risks, efforts, and expenses they are undertaking to provide essential
services in a safe and reliable manner during the COVID-19 emergency; and

**WHEREAS,** Section 606 of the City Charter does not require codification of this Grocery
Store Employee Hazard Premium Pay Ordinance because it is temporary, and
therefore, not a general ordinance in force; and

**WHEREAS**, pursuant to the provisions and requirements of the California
Environmental Quality Act of 1970, together with related State CEQA Guidelines and
Title 21 of the San José Municipal Code (collectively, "CEQA"), the Director of Planning,
Building and Code Enforcement has determined that the provisions of this Ordinance do
not constitute a project, under File No. PP17-008 (General Procedure and Policy
Making resulting in no changes to the physical environment); and

NVF:EJM:KML
2/3/2021

ORD. NO. 30534

**WHEREAS**, the City Council of the City of San José is the decision-making body for this Ordinance; and

**WHEREAS**, this Council has reviewed and considered the "not a project" determination under CEQA prior to taking any approval actions on this Ordinance;

**NOW, THEREFORE,** BE IT ORDAINED BY THE COUNCIL OF THE CITY OF SAN JOSE:

## SECTION 1.  Title

This ordinance will be known as the "Grocery Store Employee Hazard Premium Pay Ordinance".

## SECTION 2.  Authority

A.     This Ordinance is adopted based on the same powers pursuant to which the City adopted its Minimum Wage Ordinance in Chapter 4.100 of the San José Municipal Code, including Article XI, Section 7 of the California Constitution and Section 1205(b) of the California Labor Code.

B.     The City intends the enactment of this Ordinance to be an exercise of the City's general police powers to protect the public health, safety and welfare as those powers are set forth in State and Federal Law.

## SECTION 3.  Intentionally Omitted.

NVF:EJM:KML
2/3/2021

ORD. NO. 30534

## SECTION 4.  Effective Dates of the Ordinance

A.   This Grocery Store Employee Hazard Premium Pay Ordinance ("Ordinance") is effective thirty (30) days following the date of its adoption.

B.   This Ordinance will expire one hundred twenty (120) days from the effective date of this Ordinance.

## SECTION 5.  Definitions

The following shall apply to this Ordinance:

A.   "Base Wage" shall mean the hourly wage paid to Covered Employees as of the effective date of this Ordinance not including Hazard Premium Pay owed under this Ordinance or any "Employer-Initiated Hazard Pay".

B.   "City" shall mean the City of San José.

C.   "Covered Employer" shall mean:

1.   Grocery Store as defined herein, that employs three hundred (300) or more employees nationwide, regardless of where those employees are employed, including but not limited to chains, integrated enterprises, or franchises associated with a franchisor or network of franchises with Franchisees that employ more than three hundred (300) employees in the aggregate, regardless of where those employees are employed.

To determine the number of Grocery Store's employees, the calculation shall be based upon:

NVF:EJM:KML
2/3/2021

ORD. NO. 30534

a.   The actual number of employees per calendar week who worked for compensation during the pay period preceding the effective date of this Ordinance.

b.   All employees who worked for compensation shall be counted, including but not limited to:

   i.   Employees who are not covered by this Ordinance;
   ii.   Employees who worked inside the City;
   iii.   Employees who worked outside the City; and
   iv.   Employees who worked in full-time employment, part-time employment, joint employment, temporary employment, or through the services of a temporary services or staffing agency or similar entity.

D.   "Covered Employee" shall mean any person who:

1.   In a calendar week, performs at least two (2) hours of work for a Covered Employer within the geographic boundaries of the City; and

2.   Qualifies as an employee entitled to payment of a minimum wage from any Covered Employer under the California minimum wage law, as provided under Section 1197 of the California Labor Code and wage orders published by the California Industrial Welfare Commission.

E.   "Employer Initiated Hazard Pay" shall mean any other premium hourly rate already paid by a Covered Employer solely to compensate Covered Employees for working during the pandemic.

F.   "Franchise" means a written agreement by which:

NVF:EJM:KML
2/3/2021

1.    A Person is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan prescribed or suggested in substantial part by a Franchisor or its affiliates; and

2.    The operation of the business is substantially associated with a trademark, service mark, tradename, advertising, or other commercial symbol; designating, owned by, or licensed by a Franchisor or its affiliates; and

3.    The Person pays, agrees to pay, or is required to pay, directly or indirectly, a fee for the rights granted to the Person under such written agreement.

G.    "Franchisee" means a Person to whom a Franchise is offered or granted.

H.    "Franchisor" means a Person who grants a franchise to another Person.

I.    "Holiday Premium" shall mean the hourly wage paid to Covered Employees for performing work during a holiday or holiday season.

J.    "Hazard Premium Pay" shall mean Covered Employer shall pay the amount of three dollars ($3.00) per hour in hazard pay above and beyond any payments already owed to the Covered Employee.

K.    "Hours Worked" means the time during which a Covered Employee is subject to the control of a Covered Employer, including all the time the Covered Employee is permitted to work, and on-call.

L.    "Person" shall mean any individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, business trust, estate, trust,

NVF:EJM:KML
2/3/2021

ORD. NO. 30534

association, joint venture, agency, instrumentality, or any other legal or commercial entity, whether domestic or foreign.

M.     "Grocery Store" shall mean a retail store in the City of San José that sells household foodstuffs for offsite consumption, with at least ten percent (10%) of its sales floor area dedicated to sale of non-taxable merchandise including, but not limited to, the sale of fresh produce, meats, poultry, fish, deli products, dairy products, canned foods, dry foods, beverages, baked foods and/or prepared foods.

N.     "Retaliatory Action" shall mean the failure to hire, or the discharge, suspension, demotion, penalization, lowering of the Base Wage or Holiday Premium wage, or discrimination or any other adverse action against a Covered Employee with respect to the terms and conditions of the Covered Employee's employment, for opposing any practice proscribed by this Ordinance, for participating in proceedings related to this Ordinance, for seeking to enforce his or her rights under this Ordinance by any lawful means, or for otherwise asserting rights under this Ordinance.

## SECTION 6.  Payment of Hazard Premium Pay to Covered Employees

A.     Hazard Premium Pay.  For all hours worked and in addition to the Covered Employee's Base Wage or Holiday Premium Wage, whichever applicable at the time of hours worked, Covered Employers shall pay Hazard Premium Pay to their Covered Employees. The. Covered Employers providing Employer-Initiated Hazard Pay will be credited for doing so in accordance with Section 13.

B.     Duration of Hazard Premium Pay.  Covered Employers shall pay Hazard Premium Pay to all workers for any pay period during one hundred twenty (120) days from the effective date of this Ordinance. Unless extended by the City

NVF:EJM:KML
2/3/2021

ORD. NO. 30534

Council, this Ordinance shall expire one hundred twenty (120) days from the effective date of the Ordinance.

## SECTION 7.  Protections

A.   No Covered Employer shall, as a result of this Ordinance going into effect, take any of the following actions:

   1.   Reduce a Covered Employee's compensation;

   2.   Limit a Covered Employee's earning capacity.

B.   It shall be a violation if this Ordinance is a motivating factor in a Covered Employer's decision to take any of the actions in paragraph A of this section unless the Covered Employer can prove that its decision to take the action(s) would have happened in the absence of this Ordinance going into effect.

## SECTION 8.  Notice and Posting

Every Covered Employer shall post in a conspicuous place at any workplace or job site where any Covered Employee works, a notice informing Covered Employees of their rights under this Ordinance.  Every Covered Employer shall post notices in English, Spanish, and any other language spoken by at least five percent (5%) of the Covered Employees at the workplace or job site.  Every Covered Employer also shall provide each Covered Employee at the time this Ordinance becomes effective or at the time of hire, whichever is later, the Covered Employer and owner or manager's name; address; telephone number; and whether it is part of a chain, integrated enterprise, or franchise associated with a franchisor or network of franchises.  If the information the Covered Employer provided to the Covered Employee changes, the Covered Employer shall provide the updated information in writing within ten (10) days of the change.

NVF:EJM:KML
2/3/2021

ORD. NO. 30534

## SECTION 9.  Retaliation Prohibited

It shall be unlawful for a Covered Employer or any other party to discriminate in any
manner or take adverse action against any Covered Employee in retaliation for
exercising rights protected under this Ordinance.  Rights protected under this Ordinance
include, but are not limited to: the right to file a complaint or inform any person about
any party's alleged noncompliance with this Ordinance; and the right to inform any
person of his or her potential rights under this Ordinance and to assist him or her in
asserting such rights.  Protections of this Ordinance shall apply to any Covered
Employee who mistakenly, but in good faith, alleges noncompliance with this
Ordinance.  Taking adverse action against a Covered Employee, including but not
limited to lowering Covered Employees' Base Wage or Holiday Premium Wages or
reduction of hours, within ninety (90) days of the Covered Employee's exercise of rights
protected under this Ordinance shall raise a rebuttable presumption of having done so
in retaliation for the exercise of such rights.

## SECTION 10.  Enforcement

A person aggrieved by a violation of this Ordinance on or after the effective date of this
Ordinance shall have the same rights to bring a civil action and the same private
remedies as are set forth in the Minimum Wage Ordinance in Section 4.100.090 B, C
and E of the San José Municipal Code, entitled "Enforcement."

## SECTION 11.  Covered Employee Remedies for Violations

A.      Damages and Restitution.  Every Covered Employer who violates this Ordinance,
        or any portion thereof shall be liable to the Covered Employee whose rights were
        violated for any and all relief, including, but not limited to:

NVF:EJM:KML
2/3/2021

ORD. NO. 30534

1. Legal and equitable relief including but not limited to reinstatement, rescission, the payment of Hazard Premium Pay unlawfully withheld, and the payment of all penalties and fines imposed pursuant to other provisions of this Ordinance or State law.

2. Interest on all due and unpaid wages at the rate of interest specified in subdivision (b) of Section 3289 of the California Civil Code, which shall accrue from the date that the wages were due and payable as provided in Part 1 (commencing with Section 200) of Division 2 of the California Labor Code, to the date the wages are paid in full.

B. Civil Enforcement.  Any Covered Employee aggrieved by a violation of this Ordinance, or any other person or entity acting on behalf of the public as provided for under applicable state law, may bring a civil action in a court of competent jurisdiction against the Covered Employer violating this Ordinance.  A Covered Employee, upon prevailing, shall be entitled to such legal or equitable relief as may be appropriate to remedy the violation including but not limited to monies to be paid pursuant to this Ordinance, back pay, reinstatement, rescission, and reasonable attorneys' fees and costs. Any other person or entity enforcing this Ordinance on behalf of the public as provided for under applicable state law, upon prevailing, shall be entitled only to equitable, injunctive and/or restitutionary relief, and reasonable attorneys' fees and costs.  Nothing in this Ordinance shall be interpreted as restricting, precluding, or otherwise limiting a separate or concurrent criminal prosecution under the Municipal Code or state law.  Jeopardy shall not attach as a result of any administrative or civil enforcement action taken pursuant to this Ordinance.

NVF:EJM:KML                                                    ORD. NO. 30534
2/3/2021

## SECTION 12.  Additional Remedies

The remedies, penalties and procedures provided under this Ordinance are cumulative
and are not intended to be exclusive of any other available remedies, penalties and
procedures.

## SECTION 13.  Credit for Employer-Initiated Hazard Pay

Hazard Premium Pay otherwise required under this Ordinance shall be reduced by the
hourly amount of any Employer-Initiated Hazard Pay (e.g. A Covered Employer offering
a two dollar ($2.00) per hour Employer-Initiated Hazard Pay pays an additional one
dollar ($1.00) per hour in Hazard Premium Pay per this Ordinance.)  Such Covered
Employer must demonstrate that, as of the effective date of this Ordinance and in any
subsequent covered pay periods, all Covered Employees are receiving such Employer-
Initiated Hazard Pay. No Covered Employer shall be credited prospectively for any past
payments. No Covered Employer shall be credited for any hourly premiums already
owed to Covered Employees, such as but not limited to, Holiday Premiums. Nothing
herein shall be interpreted to prohibit any Covered Employer from paying more than
three dollars ($3.00) per hour in Hazard Premium Pay.

## SECTION 14.  No Waiver of Rights

Any waiver by a Covered Employee of any or all of the provisions of this Ordinance
shall be deemed contrary to public policy and shall be void and unenforceable except as
allowed herein.

NVF:EJM:KML
2/3/2021

ORD. NO. 30534

## SECTION 15.  Coexistence with Other Available Relief for Specific Deprivations of Protected Rights

The provisions of this Ordinance shall not be construed as limiting any Covered Employee's right to obtain relief to which he or she may be entitled at law or in equity.

## SECTION 16.  Conflicts

Nothing in this Ordinance shall be interpreted or applied so as to create any power or duty in conflict with any federal or state law.

## SECTION 17.  Severability

If any subsection, sentence, clause or phrase of this Ordinance is for any reason held to be invalid or unconstitutional by a court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this ordinance.  The City Council hereby declares that it would have adopted this section, and each and every subsection, sentence, clause and phrase thereof not declared invalid or unconstitutional, without regard to whether any portion of the ordinance would be subsequently declared invalid or unconstitutional.

NVF:EJM:KML
2/3/2021

ORD. NO. 30534

PASSED FOR PUBLICATION of title this 9th day of February, 2021, by the following
vote:

AYES:         ARENAS, CARRASCO, COHEN, ESPARZA, JONES,
              JIMENEZ, PERALEZ.

NOES:         DAVIS, MAHAN, LICCARDO.

ABSENT:       NONE.

DISQUALIFIED:   FOLEY.

SAM LICCARDO
Mayor

ATTEST

TONI J. TABER, CMC
City Clerk